UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ROBERT P. FILTEAU,

                            Plaintiff,

               -v-

HON. A. GAIL PRUDENTI, in her Official Capacity As
Chief Administrative Judge of the Courts of the State of
New York; and the OFFICE OF COURT
ADMINISTRATION OF THE NEW YORK STATE
UNIFIED COURT SYSTEM,

                            Defendants.

------------------------------------------------------------------------X

15 Civ. 3464 (PAE)

OPINION & ORDER

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/17/16
```

PAUL A. ENGELMAYER, District Judge:

At issue in this case is plaintiff's claim that an alleged deficiency in his publicly available

criminal record has deprived him of a constitutionally protected interest.  Plaintiff Robert P.

Filteau seeks injunctive relief against the Hon. A. Gail Prudenti, in her capacity as Chief

Administrative Judge of the courts of New York State,[1] and the Office of Court Administration

("OCA") of the New York State Unified Court System (collectively, "defendants"), under the

Fifth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of

1871, 42 U.S.C. § 1983, and Article 1, § 6 of the New York State Constitution.  Filteau claims

that defendants have deprived him of property and liberty rights in his public good name,

reputation, and integrity without due process of law by maintaining official, publicly available

---

[1] The Chief Administrative Judge is currently the Hon. Lawrence K. Marks.  *See*
https://www.nycourts.gov/admin/execofficers.shtml (accessed Feb. 16, 2016).

records that incompletely report the history and disposition of a criminal case in which he was charged.

Defendants now move to dismiss Filteau's First Amended Complaint ("FAC"), Dkt. 15, under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, defendants' motion to dismiss is granted.

## I.    Background

### A.    Facts[2]

On April 7, 2013, Filteau, then a Fordham University student, was involved in a verbal altercation with another student near the school's campus, and arrested by the New York Police Department.  FAC ¶ 8.  He was charged, in an information, with three misdemeanors and a violation under the New York Penal Law ("P.L.").  *Id.*  Relevant here are the charges of a Class A misdemeanor for criminal possession of a weapon in the fourth degree with intent to use it, in violation of P.L. § 265.01(2) (the "criminal possession charge"), and a violation (a petty offense) for harassment in the second degree, in violation of P.L. § 240.26(1) (the "harassment charge").  *Id.*

On December 10, 2013, Filteau pled guilty to the harassment charge before the Hon. Marc J. Whiten in the New York City Criminal Court in the Bronx ("Criminal Court").  *Id.* ¶ 9.  Before Filteau entered that plea, however, the People, pursuant to an agreement with Filteau,

---

[2] The facts recited herein are drawn from the FAC, and the attached exhibits.  For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  At the motion to dismiss stage, the Court "may consider 'any written instrument attached to [the Complaint] as an exhibit or any statements or documents incorporated in it by reference.'"  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (alteration in original) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

moved to dismiss the criminal possession count, and Judge Whiten granted the motion.  *Id.*; *id.*, Ex. 1 ("Plea Tr."), at 2.  Filteau was sentenced to a conditional discharge and a 10-day order of protection.  FAC ¶ 9.

The OCA, the administrative arm of the New York State Unified Court System, creates and maintains records for the Criminal Court, using a computerized system called the Criminal Records and Information Management System ("CRIMS").  *Id.* ¶¶ 7, 12, 19.  One publicly available official record generated by CRIMS is a certificate of disposition ("COD").  *Id.* ¶¶ 1, 12.

In February 2014, Filteau obtained a copy of the then-current COD for his case, dated February 10, 2014.  *Id.* ¶ 11; *id.*, Ex. 2 ("Feb. 2014 COD").  Filteau perceived two deficiencies in it.  FAC ¶ 11.  First, the Feb. 2014 COD listed various "Arraignment Charges" by P.L number, but did not affirmatively state that the criminal possession charge had been dismissed, or how that dismissal had come about.  *See id.* ¶ 11; Feb. 2014 COD.  Second, the Feb. 2014 COD indicated that an order of protection had been ordered for two years, not 10 days.  FAC ¶ 11.

Filteau's counsel took steps to modify the official records to reflect the dismissal of the criminal possession charge and the fact that the protective order was for 10 days.  *Id.* ¶¶ 13, 16.  Relevant here, he contacted deputy chief clerk William Reyes.  *Id.* ¶ 13.  Reyes stated that he could not correct the official record, but provided Filteau's counsel with a handwritten COD, dated March 10, 2014 ("Handwritten COD"), which stated that the criminal possession charge had been "Dismissed" and that the order of protection to which Filteau had been sentenced was for 10 days.  *Id.* ¶ 14; *id.*, Ex. 3 ("Handwritten COD").  On July 2, 2014, Reyes notified Filteau's counsel that, despite contacting numerous officials, his efforts to modify Filteau's official COD had been unsuccessful.  FAC ¶ 15; *id.*, Ex. 4.

3

On July 11, 2014, Filteau's counsel wrote to Prudenti, asking that the official records be corrected. FAC ¶ 16; *id.*, Ex. 5. On July 24, 2014, Justin Barry, the chief clerk of the Criminal Court, sent Filteau a letter in response. FAC ¶ 17; *id.*, Ex. 6. Barry acknowledged that the protective order was supposed to last 10 days, per the sentence Judge Whiten had imposed. *Id.*, Ex. 6. However, with respect to the COD's failure to affirmatively indicate that the criminal possession charge had been dismissed, Barry stated that "certificates of disposition, even before CRIMS was first put into service, have never reported this information"; rather, he stated, when a defendant is found or pleads guilty to another count or lesser-included offense, the CODs "only report on that disposition." *Id.* Barry stated that he would bring Filteau's request for reconsideration of this policy to the attention of appropriate administrators. *Id.* He also noted that the clerical staff had already given Filteau a handwritten COD containing the requested information. *Id.*

### B.   Procedural History

On May 4, 2015, Filteau initiated this lawsuit, by filing his initial Complaint. Dkt. 1. He challenges the most recent COD issued in connection with his New York state criminal case, dated March 31, 2015. FAC, Ex. 7 ("March 2015 COD"). The March 2015 COD now correctly states, as to the duration of the protective order, that the order was to last 10 days. However, as to the criminal possession charge, the March 2015 COD lists the charge among the arraignment charges, *see id.* (listing 265.01 as the third charge), but, in its "Case Disposition Information" section, does not state that the charge was dismissed or how the dismissal came about, *see id.*

On June 24, 2015, defendants filed a motion to dismiss, Dkt. 7, along with a supporting memorandum of law, Dkt. 9 ("Def. Br."), and affirmation and attached exhibits, Dkt. 8 ("Martin Aff."). On July 30, 2015, Filteau filed the FAC. Dkt. 15. The FAC faults defendants for the failure of the COD to affirmatively report the fact of the criminal possession charge's dismissal,

noting that this fact is maintained in the CRIMS system and included in internal and inter-agency reports.  FAC ¶ 19.  The FAC alleges that this deficiency may hurt Filteau's job prospects in the financial services industry, where he works and intends to work.  *See id.* ¶¶ 23–25.  It alleges that job applicants in that industry must "self-disclose any previous crimes the applicant has been convicted of and additional information about the convictions," and that if Filteau disclosed the conviction for the harassment violation while stating that the criminal possession charge had been dismissed, an employer could not, looking to the COD, verify that representation.  *Id.* ¶ 23.  The FAC alleges that such "materially inaccurate or incomplete information . . . will be a major consideration" for potential future employers' decisions about whether to hire or maintain him as an employee in a compliance department.  *Id.* ¶ 24.  Finally, the FAC alleges, Filteau is required to "possess various licenses" in connection with his work; if a license were denied or suspended based on an agency's conclusion that Filteau had supplied false information about the disposition of his criminal case, he could be prohibited from future work in the financial industry.  *Id.* ¶ 25.

On August 11, 2015, defendants submitted a letter indicating their intent to rely on their previous motion to dismiss.  Dkt. 16.  On September 15, 2015, Filteau filed a memorandum of law in opposition to that motion.  Dkt. 21 ("Pl. Br.").  On September 25, 2015, defendants filed a reply memorandum in support of their motion.  Dkt. 22 ("Def. Reply Br.").[3]  On November 23, 2015, the Court heard argument ("Tr.").

---

[3] Filteau argues that the Court may not consider the Martin Affirmation in resolving the motion to dismiss.  Pl. Br. 8–10.  Defendants argue that the affirmation usefully provides "general practical background on the CRIMS system entries."  Def. Reply Br. 3.  Although the affidavit is illuminating insofar as it explains the technological hurdles that have led defendants not to modify the COD further, the Court may not consider it in deciding the pending motion.  A court may consider documents "integral" to a complaint, but "integral" does not mean any document related to the core substance of the complaint.  Rather, "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion."  *Chambers v. Time Warner, Inc.*, 282 F.3d

On December 3, 2015, with the Court's permission, Filteau filed a supplemental letter memorandum addressing issues raised by the Court at argument.  Dkt. 31 ("Pl. Supp. Br.").  On December 9, 2015, defendants filed a response.  Dkt. 32 ("Def. Supp. Br.").

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)) (internal quotation marks omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "[R]ather, the complaint's *factual* allegations must be enough to raise a right to relief above the

---

147, 153 (2d Cir. 2002).  Here, the FAC has not attached, incorporated by reference, or relied on the Martin Affirmation or Exhibit D (the only exhibit that appears different from Filteau's own exhibits).  The Court therefore does not consider the Martin Affirmation or the exhibits attached thereto.  *See, e.g.*, *Simon v. City of New York*, No. 14 Civ. 8391 (JMF), 2015 WL 2069436, at *1 n.2 (S.D.N.Y. May 4, 2015) (declining to consider defendants' affidavits submitted in support of motion to dismiss), *reconsideration denied*, 2015 WL 4092389 (S.D.N.Y. July 6, 2015); *Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.*, 516 F. Supp. 2d 270, 279 (S.D.N.Y. 2007) (same applied to materials submitted by plaintiff in opposition).

speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks, citation, and alteration omitted) (emphasis in *Arista Records*).

## III.   Discussion

The FAC brings claims under 42 U.S.C. § 1983 for alleged violations of Filteau's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, FAC ¶ 27, and a parallel provision of the New York State Constitution, Article I, § 6, *id.* ¶ 34. As to all claims, its core thesis is that Filteau's "property and liberty interest and right in his public good name, reputation and integrity" has been and is being deprived through defendants' "entering of inaccurate and misleading information in the official records of the [New York State] Court System . . . , to which the public will readily have access." *Id.* ¶ 27. Defendants counter that the FAC does not state a claim of a cognizable constitutional injury. Def. Br. 10– 12.[4]

A court examining a procedural due process claim under the Fourteenth Amendment "first asks whether there exists a liberty or property interest which has been interfered with by the State; [and] second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)) (internal quotation mark omitted). Therefore, to survive a motion to dismiss, a due process claim under § 1983 must allege, *inter alia*, "the deprivation of a constitutionally protected interest." *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002).

---

[4] Defendants separately pursue dismissal based on principles of abstention and comity. Def. Br.7–9; Def. Reply Br. 3–4. Because the Court holds that the FAC fails to state a claim, it does not reach those alternative arguments.

"A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 329–30 (2d Cir. 2004) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  Rather, loss of a person's reputation can rise to the level of a due process violation "if that loss is coupled with the deprivation of a more tangible interest"; such a claim "is commonly referred to as a 'stigma-plus' claim." *Id.* at 330; *see also Valmonte*, 18 F.3d at 999.[5]

"To establish a 'stigma plus' claim, a plaintiff must show (1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).  The Court addresses these two elements in turn, and holds that the FAC fails to adequately plead either.

### A.    Stigma

To adequately plead the first element of a stigma-plus claim, Filteau must allege that the government has made a statement (a) "capable of being proved false, and that he . . . claims is

---

[5] In moving to dismiss, defendants argued that plaintiff had failed to allege a constitutional injury because he did not plead an injury that was "sufficiently serious" and that resulted from a "culpable state of mind." Def. Br. 10.  In applying this standard, defendants incorrectly drew upon the decision in *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), which involved claims under the Eighth Amendment, not the Due Process Clause of the Fifth and Fourteenth Amendments. Defendants also drew on cases involving the falsification of medical records and the standards for expunging criminal records, yet neither is applicable here.  Def. Br. 10–12.  At argument, the Court asked counsel to focus on the stigma-plus doctrine, and permitted supplemental briefing on the application of that doctrine.  *See* Tr. 15, 27–34; Dkts. 30–32.

false," and (b) "sufficiently derogatory to injure his . . . reputation." *Id.*[6] The FAC falls short on both fronts.

### 1.    Falsity

The FAC does not adequately allege that defendants have made publicly available false information about him, because, quite simply, it does not allege that the COD is false. In fact, the COD correctly conveys the information that it contains. The most recent COD, dated March 31, 2015, as modified as a result of Filteau's efforts, accurately lists as the "Arraignment Charges" the charges made in the criminal information brought against Filteau, including the criminal possession charge. *See id.*, Ex. 7. The COD also accurately states that Filteau pled guilty to the second-degree harassment charge.

The FAC instead alleges that the COD is incomplete, and potentially misleading, insofar as it fails to report affirmatively and in context the disposition of the criminal possession charge. *E.g.*, FAC ¶¶ 24, 27. Moreover, as his counsel clarified at argument, Filteau's main objection is not that the COD does not explicitly recite the fact of the dismissal, but that it does not reveal how the dismissal came about: on a prosecutor's motion, a motion that was "a material part of his guilty plea agreement." *E.g.*, FAC ¶ 21. As counsel conceded, the COD does not imply that

---

[6] The statement must also be "publicized." *Abramson*, 278 F.3d at 102. That requirement appears to be met here: The parties do not dispute that Filteau's COD is publicly available, and therefore the information in it has been "made public." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980) (quoting *Gentile v. Wallen*, 562 F.2d 193, 197 (2d Cir. 1977)); *see* FAC ¶ 27 (alleging that "the public will readily have access" to Filteau's COD); Tr. 8–9 (defendants' acknowledgment that an employer could access the COD); *cf. Brandt v. Board of Coop. Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987) (reversing grant of summary judgment where plaintiff, a public school teacher, could show that future employers were likely to learn of charges in his personnel file and refuse to hire him on that basis). The parties do dispute whether other documents besides the COD related to the underlying criminal proceeding are publicly available. *See* Tr. 8–9; 15; Pl. Supp. Br. 1; Def. Supp. Br. 2. The Court has no occasion to resolve that dispute here.

the criminal possession charge remains pending, and under New York Criminal Procedure Law, Filteau's guilty plea to the companion harassment charge *automatically* disposed of the other charges (including criminal possession) covered by the same charging instrument.  Tr. 23–24.[7] The fact of the dismissal is therefore implicit in the COD.  Filteau argues that the fact that the dismissal was the product of a prosecutor's pre-plea motion, as opposed to occurring by operation of law, matters because it implies that the prosecutor doubted the factual basis for that charge.  Therefore, Filteau argues, reporting this context on the COD would more fully eliminate the taint associated with that charge.  Tr. 18–19.

Simply put, the COD's omission of this subtlety does not give rise to a plausible federal constitutional claim.  The COD is not rendered false for being silent as to how the dismissal of the criminal possession charge came about.  Filteau fears that the COD's failure to corroborate his account of how he worked free of the possession charge may complicate his ability to explain this event, in the best possible light, to a prospective employer.  *See* Pl. Supp. Br. 2; FAC ¶ 23 ("If Plaintiff does truthfully disclose [on a job application] that he pled guilty to a non-criminal violation arising from a verbal altercation and more serious charges of using a dangerous weapon were dismissed, an employer obtaining a certificate of disposition of Plaintiff's case in the official Court records will not find this information verified.").  But the Due Process Clause does not set a standard of narrative perfection for such criminal disposition records.  It does not set an aspirational standard of reportorial completeness.  It does not require a government body to maintain records in the way that describe the fate of a criminal charge with optimal specificity or in the light most favorable to the subject.  To be sure, the COD may be criticized as elliptical, or

---

[7] *See* Def. Br. 5–6.  New York Criminal Procedure Law ("C.P.L.") § 220.30 provides:  "The entry and acceptance of a plea of guilty to part of the indictment constitutes a disposition of the entire indictment."  *See also* C.P.L. § 340.20 (applying § 220.30 to criminal informations).

opaque, as, according to Filteau, even deputy chief clerk Reyes criticized it.  FAC ¶ 15.  But the Due Process Clause does not create a right to be free of such irritants.  It protects an individual's "good name, reputation, honor, [and] integrity," *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), only where a governmental actor affirmatively provides information that is alleged to be "false" and "sufficiently derogatory" so as to injure a person's reputation and cause the deprivation of an additional tangible interest, *Vega*, 596 F.3d at 81.

Such is not remotely the case here.  The FAC fails to identify a "reputation-tarnishing statement that is *false*."  *Id.* at 82 (emphasis in original).  Instead, it alleges only that added information in the COD would assist the reader to understand better the process by which the dismissal of the criminal possession charge came about.  This deficiency does not violate Filteau's Due Process rights.  *See id.* (dismissing claim by prisoner because his designation as a sex-offender by prison officials was not false in light of the underlying conduct for which prisoner was convicted, notwithstanding that prisoner was convicted of assault and acquitted of sexual assault).  That a reader of the COD might not understand that the criminal possession count was dropped on a prosecutor's affirmative motion rather than by operation of state law does not make the information in the COD false.

*Zdebski v. Schmucker*, 972 F. Supp. 2d 972 (E.D. Mich. 2013), on which Filteau relies, if anything assists defendants.  The district court there dismissed the claims of a man who claimed that misleading codes contained in the state's criminal conviction reporting system had actually led others to wrongly believe he was convicted of a sex crime involving a minor, when in fact he was convicted of a sex crime involving force/coercion.  *Id.* at 976, 978–80.  The court held that the plaintiff failed to state a constitutional claim because the codes used in the reporting system, while potentially misleading to others, were simply not incorrect:  "In short, Plaintiff cannot

show that Defendants published *incorrect* information about his criminal conviction and rather

can only show that others interpreted this information incorrectly.  Plaintiff's claims against

*these* Defendants cannot proceed." [8]  *Id.* at 989; *see also id.* at 990 ("He does not, however,

identify any specific actions that the individual defendants . . . took against him, such as

affirmatively publishing false information about him.").  Similarly, here, because Filteau's COD

is not incorrect as to any factual particular, he cannot allege a constitutional injury to his

reputation on account of it.

Revealingly, Filteau admits that the FAC's allegations are "difficult to conceptualize as a

defamation or state law tort claim."  Pl. Supp. Br. 1.  This admission reinforces the FAC's failure

to plead a viable due process claim.  As the Supreme Court has held, the due process requirement

of a "stigma-plus" showing makes that constitutional doctrine effectively an extension of state

defamation claims, albeit with added elements intended to prevent the constitutionalizing of such

state tort causes of action.  *See Paul*, 424 U.S. at 697–99, 701.  As the Second Circuit has

explained:

> [The] "stigma-plus" standard . . . demands that the plaintiffs establish 1) that they
> were defamed, and 2) that the defamation . . . was coupled with a deprivation of a
> legal right or status.  To show defamation, the plaintiffs must show that the
> statements complained of were false; that they stigmatized the plaintiffs; and that
> they were publicized.

*Abramson*, 278 F.3d at 101–02 (citations omitted).  Filteau's acknowledgement that the FAC's

claims are "difficult to conceptualize as a defamation," or are "sui generis," effectively concedes

that the COD is not false, and therefore that his Due Process Clause claim is not viable.

---

[8] The court's reference to "*these* Defendants" left open the possibility that a constitutional injury could have been inflicted, not by those who maintained the state's criminal records, but perhaps by other government officials who took later action that independently deprived the plaintiff of rights or liberties.  *See id.* at 989, 991 n.10.

Because Filteau thus fails to plead a false statement sufficient to support a constitutional violation of his liberty interest in his good name and reputation, the FAC must be dismissed.

### 2.    Sufficiently Derogatory

Even if the COD's omission of the circumstances of the dismissal of the criminal possession charge rendered it "false," the FAC, to state a claim, would still need to adequately plead that the COD placed a "stigma" on Filteau.  To result in a stigma, the information at issue must be "sufficiently derogatory to injure [plaintiff's] reputation."  *Vega*, 596 F.3d at 81; *see also Valmonte*, 18 F.3d at 999 ("[Plaintiff] first must prove that [the government conduct] will result in stigma, that is, in 'public opprobrium' and damage to [plaintiff's] reputation.").  As noted, Filteau's grievance here is limited.  It is that the COD fails to reveal that the criminal possession charge was dismissed by the prosecutor, as opposed to by operation of law when he pled guilty to the companion charge.

The FAC fails to plausibly allege that this omission would bring about the stigma, public opprobrium, or reputational or career damage required to state a claim.  And the FAC's claims as to this point are conclusory and speculative.  The FAC does not allege that there is differential stigma attached to dismissals where a prosecutor merely accedes to dismissal by operation of law upon a plea to a lesser charge as opposed to by affirmatively moving for dismissal.  Instead, without concrete facts pled in support, the FAC merely declares that an employer would give heavy weight to this factor.  *See* FAC ¶ 24 ("If the court records of such criminal proceedings contain materially inaccurate and incomplete information, *such inaccuracies* will be a major consideration in an employer's determining whether it retains an employee or will hire an applicant for a position in the compliance departments of the financial services industry in the future.") (emphasis added); *id.* ¶ 25 ("If [a financial industry] license were to be denied to Plaintiff . . . because of what a licensing agency determines to be Plaintiff's provision of

13

inaccurate information about the disposition of his criminal case as compared with what is reported in the official records of the Criminal Court, Plaintiff faces the threat of being prohibited from working in the financial services industry in the future.").

Such allegations are a far cry from the types of statements or records that courts have held or assumed to be sufficiently stigmatizing to support a stigma-plus claim. *See, e.g.*, *Paul*, 424 U.S. at 697 (public designation of plaintiff as an "active shoplifter," being defamatory per se, may impose a stigma); *id.* at 702–06 (reviewing cases finding stigma where government employees were branded as "disloyal"); *Constantineau*, 400 U.S. at 434, 436–37 (holding stigmatizing a public posting identifying an individual as "one who 'by excessive drinking' . . . expos[es] himself or family 'to want' or becom[es] 'dangerous to the peace' of the community," *id.* at 434); *Vega*, 596 F.3d at 81–82 ("wrongly classifying [an individual] as a sex offender" sufficiently stigmatizing); *Valmonte*, 18 F.3d at 1000 ("no dispute" that inclusion on a list of alleged child abusers imposed stigma); *Hall v. Marshall*, 479 F. Supp. 2d 304, 316 (E.D.N.Y. 2007) ("allegation that [plaintiff's] rap sheet erroneously recites that he was arrested for murder obviously . . . qualifies as 'stigma'").

The Court therefore holds that even if the COD were treated as false by virtue of its failure to reveal how the criminal possession charge came to be dropped, this lapse is not sufficiently derogatory to give rise to a stigma. For this independent reason, the first element of a stigma-plus claim—stigma—has not been adequately pled.

### B.    Plus

To plead a claim of a Due Process violation based on loss of a cognizable liberty or property interest in this context, the FAC must also allege a sufficient "plus" factor. "[R]eputation alone, apart from some more tangible interests such as employment, is [not] either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process

Clause." *Davis*, 424 U.S. at 701.  "[I]*n addition* to the stigmatizing statement," *Sadallah*, 383 F.3d at 38 (internal quotation marks and citation omitted) (emphasis in *Sadallah*), a plaintiff must allege "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights," *id.*  "[D]eleterious effects which flow directly from a sullied reputation would normally . . . be insufficient.  These would normally include the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation."  *Valmonte*, 18 F.3d at 1001 (discussing *Paul v. Davis* and *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)).  "Burdens that can satisfy the 'plus' prong under this doctrine include the deprivation of a plaintiff's property, and the termination of a plaintiff's government employment."  *Sadallah*, 383 F.3d at 38 (citations omitted).

Here, the FAC advances two theories as to why the allegedly stigmatizing COD would impose employment-related burdens on him.

First, it alleges that Filteau's job prospects in the financial services industry, particularly were he to seek work in a firm's compliance department, would be diminished.  FAC ¶¶ 23–24, 32.  The industry, the FAC alleges, "place[s] an emphasis on the integrity and law-abiding character of the employees."  *Id.* ¶ 23.  And the COD's failure to disclose the circumstances under which the criminal possession charge was disposed of "will be a major consideration in an employer's determining whether it retains an employee or will hire an applicant for a position . . . in the future."  *Id.* ¶ 24.  This would dog Filteau's employment prospects, because either an employer will run a criminal-records search yielding this record, *id.*, or Filteau will be obliged to "self-disclose any previous crimes," and the employer's follow-up diligence efforts would lead it to the ostensibly false COD, *see id.* ¶ 23.

Filteau's claim of diminished job prospects is insufficient to support a claim of injury to a protected liberty interest.  Under settled doctrine, such generalized claims of burdens resulting from reputational harm are insufficient to plead cognizable injury.

For example, in *Paul v. Davis*, law enforcement had circulated a picture of Davis on a flyer to business owners identifying "Active Shoplifters"; Davis indeed had an outstanding charge for shoplifting at the time the flyer was sent, but the charge was later dropped.  424 U.S. at 694–96.  Davis's employer at the time the flyer was circulated did not terminate his employment, but Davis's "complaint asserted that the 'active shoplifter' designation . . . would seriously impair his future employment opportunities."  *Id.* at 696–97.  The Supreme Court held these interests insufficient:  "[Plaintiff] in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment.  That being the case, [law enforcement's] defamatory publications, however seriously they may have harmed [plaintiff's] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."  *Id.* at 712.

Similarly, in *Hall v. Marshall*, on which Filteau relies, Hall alleged that his rap sheet erroneously indicated that he had been arrested for second-degree murder, when, in fact, there was no murder associated with the offense with which he was charged.  479 F. Supp. 2d at 311.  Hall claimed that the erroneous rap-sheet entry "will adversely impact his interactions with law enforcement and prospective employers," but the court rejected that claim as insufficient under *Paul v. Davis*.  *Id.* at 316–17.

Filteau's general fear of harm to his employment prospects is similarly inadequate.  The prospect that a future employer would look askance by virtue of not knowing the mechanics underlying the dismissal of Filteau's criminal possession charge is not a "material *state-imposed*

burden." *Sadallah*, 383 F.3d at 38 (emphasis added); *cf. Valmonte*, 18 F.3d at 995–96, 1001–02 (state law requirement that certain child care employers consult list of alleged child abusers before hiring an applicant—and if hired to maintain a written record explaining why—created a "statutory impediment [to employment] established by the state" sufficient to constitute a deprivation of liberty, *id.* at 1001). Filteau counters that the potentially "perpetual" and "indefinite[]" nature of the criminal records distinguishes his case, *see* Pl. Supp Br. 2; Tr. 28, but he cites no supporting authority. The "plus" required by the stigma-plus doctrine requires that the plaintiff be deprived of a tangible interest in addition to the interest in one's reputation, and the FAC's first theory fails to so plead.

Filteau's second theory of a stigma "plus" is that the incomplete court records could hinder his ability to obtain or retain licenses necessary to his profession. The FAC alleges:

> In order to continue to work in the financial services industry, Plaintiff must possess various licenses issued by various regulatory agencies. If such a license were to be denied to Plaintiff, or to be suspended for any period of time, because of what a licensing agency determines to be Plaintiff's provision of inaccurate information about the disposition of his criminal case as compared with what is reported in the official records of the Criminal Court, Plaintiff faces the threat of being prohibited from working in the financial services industry in the future.

FAC ¶ 25.

The Court assumes *arguendo* that the "regulatory" or "licensing" agencies to which the FAC refers are state agencies. The assembled case law, to date, has not fixed bright lines as to when such an agency's denial of a professional license as a result of a stigmatizing government statement will qualify as a sufficient "plus" to support a claim of deprivation of a liberty interest. On the one hand, the Supreme Court's decision in *Siegert* suggests that the fact that the denial of a state license eventually resulted from defamatory speech is itself an insufficient basis on which to find the requisite "plus." Siegert was as a psychologist at a government facility. After resigning, his prior supervisor made defamatory comments about him in the course of giving a

reference for Siegert to obtain "credentials" at another government facility where he had begun

to work.  500 U.S. at 227–28.  As a result, Siegert alleged, he was denied credentials to work at

U.S. Army-operated hospitals, rejected for positions for which he applied, and later terminated

from federal employment.  *Id.* at 228–29.  The Supreme Court majority held that, although the

statements "would undoubtedly damage the reputation of one in [Siegert's] position, and impair

his future employment prospects," this alone could not sustain a Due Process Clause claim,

because such damage was the type that, as in a state-law defamation action, inherently "flows

from injury caused by the defendant to plaintiff's reputation."  *Id.* at 234.  However, the Court

stated, had the defamation occurred "incident to the termination of Siegert's employment" with

the government, as opposed to after his resignation as had been alleged, Siegert would have

sufficiently stated a claim for the deprivation of a liberty interest.  *See id.* at 228, 234.[9]  At the

same time, a state agency's denial of a license would appear to constitute a "state-imposed

alteration of the plaintiff's status or rights," triggering due process protection.  *Vega*, 596 F.3d at

81 (quoting *Sadallah*, 383 F.3d at 38).  Consistent with this, Judge Block, in *Hall v. Marshall*,

held that the "denial of a state-issued tow-truck license would qualify as a 'plus.'"  479 F. Supp.

2d at 317.

---

[9] Dissenting, Justice Marshall noted that the defamation, as alleged, had caused Siegert both "a
loss of *government* employment" and "a change in 'legal status' occasioned by the effective
foreclosure of any opportunity for hospital credentials"; based on these effects, he argued,
"Siegert has alleged the deprivation of a cognizable liberty interest in reputation."  *Id.* at 236–37
(Marshall, J., dissenting); *see also id.* at 235 (Kennedy, J., concurring) ("[T]he question whether
[Siegert] asserted the deprivation of a liberty interest protected by the Constitution, under the
principles explained in *Paul v. Davis*, is itself one of some difficulty." (citation omitted)); *Neu v.
Corcoran*, 869 F.2d 662, 667–69 (2d Cir. 1989) (noting that "it is not entirely clear what the
'plus' is" under *Paul*, *id.* at 667, and reviewing *Paul* and subsequent case law to evaluate the
circumstances under which impact on government or non-government employment caused by
state defamation may be sufficient to support a cognizable liberty interest).

This case does not require the Court to grapple with this doctrinal ambiguity, however, because Filteau's FAC fails to plausibly plead that, as a result of the deficiencies he alleges in the COD, he will suffer *any* loss of state-awarded rights at all, including pursuant to a license. The FAC, as noted, does not allege that the COD makes any false statement about Filteau, let alone that an agency would deprive him of a license on account of it. Filteau's FAC instead speculates that a license of his may one day be denied or suspended because of an agency's assessment of *Filteau's* narrative account of his criminal case—specifically, "because of what a licensing agency determines to be *Plaintiff's* provision of inaccurate information about the disposition of his criminal case as compared with what is reported in the official records of the Criminal Court." FAC ¶ 25 (emphasis added). This pleading is inadequate. Filteau cannot manufacture a deprivation of liberty by speculating that a licensing body may one day find fault with his submission to it. The stigma-plus doctrine instead addresses the loss of a tangible interest that derives from a false statement or provision of false information by the *government*.

In addition, the FAC's claim that Filteau may prove unable to obtain or retain a professional license, on account of the manner in which the COD described his criminal case, is entirely conclusory and implausible. This claim is the very archetype of a "[t]hreadbare recital[] of [an] element[] of a cause of action, supported by mere conclusory statements," that is insufficient to plead a cause of action. *Iqbal*, 556 U.S. at 678. Filteau has not been denied a financial industry license. He has not been threatened with such a denial. His FAC does not allege that any other person has lost, or had suspended, a license based on facts approximating the ostensibly false facts in the COD. Nor does it point to any agency's regulations, policy, or practice to suspend or deny such a license based on such facts. Filteau's theory of injury is thus wholly conjectural. It pointedly contrasts with, for example, *Hall*, where the plaintiff alleged

that he "applied for a tow truck driver's license . . . and was ordered to explain the erroneous arrest information."  479 F. Supp. 2d at 312 (alteration omitted); *see id.* at 317 (noting that pleadings allege that the erroneous information in rap sheet "is preventing [Hall] from obtaining a tow-truck license").

Moreover, on the facts pled, Filteau has the ability, in any future license application or proceeding, to put the COD's narrative in context.  He can therefore minimize any theoretical risk that the COD will be misread to imply that the criminal possession charge remains pending or was dismissed other than with the prosecutor's acquiescence.  Indeed, the FAC itself reveals that Filteau already possesses the ability to corroborate his truthful claim "that . . . [the] more serious charges of using a dangerous weapon were dismissed."  FAC ¶ 23.  As the FAC pleads, Filteau has been given a handwritten COD, "which accurately stated that the charge of criminal possession of weapon in the fourth degree had been 'Dismissed.'"  *Id.* ¶ 14; *see id.*, Ex. 3. Because Filteau will almost certainly be aware of any pending license application or renewal process, he will be well positioned to clarify, using the handwritten COD and/or the transcript of his plea, the events in Crimianl Court.  *Cf.* Tr. 25–27 (discussing how Filteau would be unable to supplement his submissions to an *employer* who reviews the court records prior to granting Filteau an interview).  The FAC does not allege any facts on which to conclude that a licensing agency will ignore such a showing.

The Court therefore holds that that the FAC does not state a claim for a constitutional injury, because it fails to plead the deprivation of a cognizable liberty interest under the Due Process Clause of the Fourteenth Amendment.  Although Filteau fairly critiques the COD as providing a less than comprehensive chronicle of his criminal case, its account is neither, as pled, false nor the cause of the loss of any protected liberty or property interest.  The Court

accordingly dismisses Filteau's federal constitutional claims.  The Court declines to exercise

supplemental jurisdiction over Filteau's separate claim brought under the New York State

Constitution.[10]

**CONCLUSION**

For the reasons stated herein, the Court dismisses Filteau's federal claims with prejudice

and declines to exercise supplemental jurisdiction over Filteau's claim brought under the New

York State Constitution.  The Court therefore grants defendants' motion to dismiss the First

Amended Complaint, and directs the Clerk of Court to close this case.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: February 17, 2016
        New York, New York

---

[10] Filteau has not argued that his claim under the New York State Constitution is subject to any different analysis than his federal due process claim.  *See* Tr. 30.  On the basis of this concession, the Court considered dismissing here the state claim.  The Court has elected not to do so, mindful that, while long ago the federal and state due process clauses were treated as coextensive, *see Central Savings Bank v. City of New York*, 280 N.Y. 9, 10 (1939) (per curiam) ("[T]here is, logically, no room for distinction in definition of the scope of the two clauses."), in later years, "the New York State Constitution has consistently been given a broader interpretation than its federal counterpart," *Mehta v. Surles*, 720 F. Supp. 324, 331 n.10 (S.D.N.Y. 1989) (citing *Sharrock v. Dell Buick–Cadillac, Inc.*, 45 N.Y.2d 152, 159 (1978)), *aff'd in part, vacated in part*, 905 F.2d 595 (2d Cir. 1990).  Although the Court is skeptical that Filteau's FAC, given the deficiencies noted herein, would be held to state a due process claim under state law, with neither party having distinctly briefed that issue, it is not productive to address it at this time.  Because this case is at an early stage and all federal claims have been dismissed, and because New York State courts are better situated to assess claims brought under the New York State Constitution, the Court here, in its discretion, declines to exercise supplemental jurisdiction over Filteau's state constitutional claim.  *See* 28 U.S.C. § 1367(a) & (c)(3); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998).